UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARESTY INTERNATIONAL LAW OFFICES, P.C.

    Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY

    Defendant.

Case No. _____

**COMPLAINT**

Aresty International Law Offices, P.C. ("Aresty International") brings this insurance coverage action against its insurer, Hartford Fire Insurance Company ("Hartford"), for bad faith settlement practices. In December 2002, Aresty International purchased a business insurance policy from Hartford for its business premises at Union Wharf, Boston, Massachusetts. In April 2003, the covered premises suffered substantial water damage. The water damage destroyed much of Aresty International's business property and income, and caused Aresty International to incur significant expenses in its effort to relocate and sustain the business.

Aresty International promptly and appropriately submitted claims for the loss to Hartford. In support of its claims, Aresty International investigated and documented the loss, permitted inspections of the damaged property by Hartford representatives, provided extensive documentation, and submitted sworn statements in proof of loss as requested by Hartford. Hartford never disputed that the water damage occurred, or that Aresty

International sustained substantial damage and expenses because of it. Nevertheless, without reasonable explanation, Hartford never made more than partial payments under the policy. For over eight months, in deliberate disregard of the documentation that it had requested and received, Hartford refused to take a position with respect to Aresty International's claims. Then, in December 2003, Hartford stopped communicating with Aresty International altogether. Hartford's legal counsel informed Aresty International that Hartford did "not necessarily agree" with the amount of loss suffered by Aresty International, and that it would be denying all of Aresty International's claims due to four invoices that Aresty International had submitted five months earlier, at the request of Hartford, in support of one of the claims. Hartford alleged that the invoices were false and forged, even though Aresty International had already explained the circumstances leading to their creation in an examination under oath requested by Hartford's legal counsel.

Aresty International informed Hartford that neither the facts nor the law supported its position, and asked that Hartford acknowledge its obligations under the policy. Despite additional correspondence that specifically addressed and refuted each of the grounds advanced by Hartford for denying Aresty International's claims, Hartford has refused to alter its position. Aresty International thus seeks a declaration by this Court of its rights and Hartford's obligations under the policy, damages for breach of the insurance contract, and multiple damages, costs, and attorneys' fees due to Hartford's deceptive and unfair trade practices as demonstrated by the manner in which Hartford has handled the settlement of Aresty International's claims. In support of these claims, Aresty International alleges the following:

## PARTIES

1.      Plaintiff Aresty International Law Offices, P.C. ("Aresty International") is a Massachusetts corporation with its principal place of business at 107 Union Wharf, Boston, Massachusetts.

2.      Upon information and belief, Defendant Hartford Fire Insurance Company ("Hartford") is a Delaware corporation with its principal place of business at Hartford Plaza, Hartford, Connecticut.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000. Moreover, the Court has jurisdiction, pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P.57, because there is an actual controversy between the parties.

4.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Aresty's claim occurred in this judicial district, and because the Court has personal jurisdiction over Hartford as a result of its substantial contacts with the forum state, including but not limited to its issuance of an insurance policy covering interests and property located in the forum state.

## FACTUAL ALLEGATIONS

5.      In December 2002, Aresty International purchased a business insurance policy (the "Policy") from Hartford. The Policy covered Aresty International's business premises at Union Wharf. In particular, the Policy required Hartford to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss," including certain

types of water damage. The Policy ran from December 8, 2002, to December 8, 2003. A copy of the Policy is attached as Exhibit A.

6.     On April 19, 2003, Aresty International suffered substantial water damage to its business premises.

7.     The water damage caused Aresty International to suffer losses and expenses covered by the Policy. The losses and expenses fell under six covered categories: (1) business personal property, (2) computers, media, debris removal, valuable papers and records, (3) personal effects, (4) extra expense, (5) business income, and (6) law library.

8.     Upon discovery of the water damage, Aresty International's founder and majority shareholder, Jeffrey Aresty, immediately undertook the task of investigating and documenting the nature and extent of the loss. This task involved taking photographs of the damage on the day it occurred, keeping inventories of the quantity, cost, and value of damaged property and expenses, submitting to Hartford invoices and receipts of the costs incurred by Aresty International in connection with the water damage, and retaining consultants to render professional estimates of the time and cost necessary to replace and repair damaged property.

9.     Aresty International promptly notified Hartford of the extent of the loss.

10.    Shortly thereafter, Aresty International presented formal claims of coverage to Hartford, with the assistance of its public adjuster, Lawrence Berman.

11.    In support of its claims, Aresty International provided descriptions of the property involved. To the extent feasible, Aresty International provided complete inventories of the damaged property and incurred expenses. To the extent that the damages or expenses

were not capable of immediate determination, Aresty International noted this and made updates to the inventories.

12. Also in support of its claims, Aresty International permitted inspections of its property, books, and records by Hartford's agents and representatives. On several occasions, including on or about April 23 and April 25, 2003, Aresty International permitted inspections of its property by Hartford's John Perry and Floyd Draper, who were responsible for processing Aresty International's claims. Aresty International also permitted inspection of its books and records by forensic accountants, who were sent by Hartford about forty-five days after the loss was reported.

13. At the request of Hartford, Aresty International provided numerous documents in connection with its claims.

14. Aresty International also took reasonable steps to protect the business property from further damage. These steps involved cleaning the damaged premises, and relocating the business.

15. Despite Aresty International's cooperation with Hartford, the extent of Hartford's response was to make partial payments under the Policy.

16. Hartford's primary efforts were to delay and hinder the full resolution of Aresty International's claims.

17. For over eight months, Hartford took no position with respect to Aresty International's claims, although it had requested and received extensive documentation relating the claims.

18. Furthermore, Hartford offered no coverage guidance to Aresty International, although Aresty International had requested such guidance on numerous occasions.

19. Instead, in September 2003, nearly six months after the loss, Hartford's legal counsel requested that Jeffrey Aresty and two other employees of Aresty International submit to examinations under oath concerning the claims. In particular, the examinations were to address the creation and submission of invoices in support of Aresty International's extra expense claim.

20. Also in September, Hartford for the first time attached a reservation of rights letter to its partial payments. Hartford explained that it would "reevaluate our position after the examination under oath."

21. On November 13, 2003, Jeffrey Aresty, Andrew Breines, and Michelle Sadon submitted to examinations under oath about the extra expense invoices. All three testified that the invoices were submitted at the request of Hartford's representatives, who had refused to accept Aresty International's original documentation in support of the extra expense claim and instead had requested more detailed statements.

22. Following the examinations under oath, Aresty International submitted six "Sworn Statements in Proof of Loss" at the request of Hartford, one for each category of loss for which Aresty International had submitted a claim. The sworn statements were prepared by Hartford, and were intended to provide Hartford with enough information to make a decision about Aresty International's claims.

23. Nevertheless, Hartford continued to take no position with respect to the claims. This inaction placed Aresty International in serious financial duress, as Hartford's failure to explain its position or release more than partial payments under the Policy constrained Aresty International's ability to meet its expenses at its temporary business location.

24. Jeffrey Aresty emailed Hartford several times to explain the serious financial situation, and to reaffirm Aresty International's desire to cooperate with Hartford in the resolution of its claims.

25. On December 1, 2003, Aresty's public adjuster, Mr. Berman, requested that Hartford make a partial payment under the Policy given the urgency of Aresty's financial situation.

26. On the same day, John Perry emailed Mr. Berman that he was "having difficulty with the approval" of the requested partial payment.

27. In response, Mr. Berman asked that Mr. Perry put Aresty International in touch with Hartford representatives who would have the capacity to expedite the approval of the claims, given the deleterious effect of any further delay.

28. Mr. Perry's response was to email Jeffrey Aresty and Mr. Berman on December 1 that "I am done responding to these emails. It is not my action, but yours that has gotten you into this situation we are now in. You will both be hearing from our counsel tomorrow."

29. In a faxed letter dated December 2, 2003, Hartford's legal counsel rejected all six Sworn Statements in Proof of Loss. In an effort to explain this decision, Hartford alleged for the first time that it did "not necessarily agree" with the amount of loss suffered by Aresty International. In addition, Hartford alleged that Aresty International had presented forged and false invoices in support of its extra expense claim, thereby rendering the entire Policy void. A copy of the December 2, 2003 correspondence is attached as Exhibit B.

30. On December 3, 2003, Mr. Perry emailed Mr. Berman to "confirm our conversation today regarding a possible compromise settlement on this claim." A copy of John Perry's email is attached as Exhibit C.

31. In a letter dated December 29, 2003, Aresty International's counsel responded both to Hartford's denial of claims and its suggestion of compromise. Aresty International explained that Hartford had no factual or legal basis for its position.

32. In a letter dated August 23, 2004, Aresty International's counsel once again informed Hartford that its position was untenable in view of the facts and the law. Aresty International specifically addressed and rejected each of the grounds advanced by Hartford for its denial of the claims. Moreover, Aresty International informed Hartford that its failure to conduct a reasonable investigation of all available information before committing itself to the denial of Aresty International's claims, and its failure to offer a reasonable explanation of this denial on the basis of the law and facts, constituted violations of Mass. G.L. c.176D. As a result, Aresty International demanded that Hartford acknowledge its obligation to provide coverage for the reported losses. A copy of the August 23 correspondence is attached as Exhibit D.

33. On September 21, 2004, Hartford responded by reiterating the position it took in its December 2003 correspondence. In support of its position, Hartford once more relied on the alleged false and fictitious invoices.

## COUNT 1
### (Breach of Contract)

34. Aresty International repeats and incorporates by reference the allegations of Paragraphs 1 through 33 of the complaint.

35. Aresty International contracted with Hartford to provide insurance for its business premises at Union Wharf.

36. As part of the contract between Aresty International and Hartford, Hartford agreed to pay for damages and expenses sustained by Aresty International in connection with, among other things, business personal property, computers, media, debris removal, valuable papers and records, personal effects, extra expense, business income, and law library.

37. In consideration for Hartford's agreement, Aresty International paid Hartford annual premiums.

38. Aresty International has performed all conditions precedent, and has complied with all terms, conditions, and requirements of the Policy.

39. Hartford breached its contract with Aresty International by refusing to provide coverage for the damages and expenses sustained by Aresty International arising out of the water damage to its business premises. Moreover, Hartford breached its contract by engaging in bad faith settlement practices designed to frustrate Aresty International's rights under the Policy, including Hartford's failure to state promptly and clearly its position with respect to Aresty International's claims, its failure to undertake a serious and reasonable investigation of all available information relating to the claims, and its failure to provide a reasonable explanation for its denial of the claims prior to committing itself to a posture of denial.

40. Despite Aresty International's demand that Hartford acknowledge its obligations under the contract, Hartford has not done so.

41. As a direct and proximate result of Hartford's breach of contract, Aresty International has suffered substantial damages and expenses.

## COUNT II
### (Massachusetts Consumer Protection Act)

42. Aresty International repeats and incorporates by reference the allegations of Paragraph 1 through 41 of the complaint.

43. Hartford engaged in bad faith claim settlement practices by misrepresenting and misunderstanding pertinent coverage provisions in the Policy, by deciding to deny claims before undertaking a reasonable investigation of all available information, by failing to provide a prompt and reasonable explanation of its denial based on the law and relevant facts, and by attempting to induce Aresty International into accepting less coverage than it was otherwise owed under the Policy by stating that it was denying Aresty International's claims while expressing a willingness to "compromise."

44. Hartford's bad faith claim settlement practices constitute violations of Mass. G.L. c.176D. Violations of Mass. G.L. c.176D also constitute persuasive evidence of unfair and deceptive business practices in violation of Mass. G.L. c.93A, § 2.

45. At all relevant times, Aresty International engaged in trade or commerce in Massachusetts within the meaning of Mass. G.L. c.93A.

46. As a business entity engaged in trade or commerce, Aresty International is entitled to assert claims for unfair and deceptive business practices against Hartford under Mass. G.L. c.93A, § 11.

47. As a direct and proximate result of Hartford's unfair and deceptive business practices, Aresty International sustained substantial harm and damage.

48. Hartford's violation of Mass. G.L. c.93A entitles Aresty International to actual damages and attorneys' fees. In addition, because Hartford's violation of Mass. G.L. c. 93A was willful and knowing, Aresty International is entitled to double or treble damages, and attorneys' fees and costs.

## COUNT III
### (Declaratory Judgment)

49. Aresty International repeats and incorporates by reference the allegations of Paragraphs 1 through 48 of the complaint.

50. Because Hartford has engaged in bad faith claim settlement practices in violation of the Policy and the Consumer Protection Act, an actual controversy has arisen between Aresty International and Hartford.

51. Pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P.57, Aresty International requests a declaration of its right to payment of its claims by Hartford arising out the factual allegations set forth in Paragraphs 1 though 48 of the complaint.

WHEREFORE, Plaintiff Aresty International respectfully requests that the Court enter an Order finding in its favor and, on Count I, awarding the full amount of Aresty International's contract damages, together with interest and costs, on Count II, awarding multiple damages, interests, costs, and attorneys' fees, and, on Count III, declaring that Aresty International is entitled to payment of its claims under the Policy, and further that the Court grant such other relief as it deems just and proper.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

**ON ALL COUNTS SO TRIABLE.**

        Respectfully submitted,

        ARESTY INTERNATIONAL LAW OFFICES, PC,

        By its attorney,

        */s/ James T. Hargrove*

        James T. Hargrove (BBO# 550975)
        Goulston & Storrs
        A Professional Corporation
        400 Atlantic Avenue
        Boston, Massachusetts 02110-3333
        617-482-1776

Dated: December 1, 2004.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Aresty International Law Offices, P.C. v.__
   __Hartford Fire Insurance Company__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

   ☐ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   __N.A.__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division ☒    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME __James T. Hargrove__

ADDRESS __Goulston &Storrs, P.C. 400 Atlantic Ave., Boston, MA 02110-3333__

TELEPHONE NO. __617-482-1776__

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)                     **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Aresty International
Law Offices, P.C.

**DEFENDANTS**
Hartford Fire Insurance Company

**(b)** County of Residence of First Listed Plaintiff: Suffolk County, Massachusetts
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: N.A.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Goulston & Storrs, P.C.
400 Atlantic Avenue          617-482-1776
Boston, MA 02110-3333

Attorneys (If Known)
Lawrence A. Dugan
Morrison, Mahoney LLP
250 Summer Street   Boston, MA 02210-1181

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: |  | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property |  / ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
|  |  / ☐ 555 Prison Condition |  |  |  |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332 and 28 U.S.C. Section 2201

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** 400,000 and Declaratory Judgment
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
N.A.
JUDGE                                             DOCKET NUMBER

DATE: 12.1.04
SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY
RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____