UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 JAN 27  P  I: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| ARESTY INTERNATIONAL LAW OFFICES, P.C. | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 04-12532 RWZ |
| HARTFORD FIRE INSURANCE COMPANY | ) ) ) ) | |
| Defendant. | ) ) ) | |

## ARESTY INTERNATIONAL LAW OFFICES, P.C.'S ANSWER TO COUNTERCLAIM OF HARTFORD FIRE INSURANCE COMPANY

Plaintiff Aresty International Law Offices, P.C. ("Aresty International") hereby answers the counterclaim of Defendant Hartford Fire Insurance Company ("Hartford") as follows:

1.    Aresty International admits the allegations contained in paragraph 1 of the Counterclaim.

2.    Aresty International admits that paragraph 2 of the Counterclaim quotes from the Hartford insurance policy.

3.    Aresty International admits the allegations contained in paragraph 3 of the Counterclaim.

4.    Aresty International admits that, at the advice of its public adjuster, it supplied to Hartford and its retained accountants pre-bill worksheets that documented the time expended by Jeffrey Aresty and Andrew Breines in the clean-up and relocation of Aresty International as a result of the water damage. Answering further, Aresty

International states that the pre-bill worksheets were Aresty International's standard method for documenting the time of its employees and other staff; that Aresty International used this method for the sole purpose of documenting to Hartford and its accountants the time expended by Aresty and Breines in the clean-up and relocation effort; and that Hartford was made aware of the limited purpose for which the pre-bill worksheets were submitted. Aresty International denies that the pre-bill worksheets purported to represent the hourly rates at which this time would be charged to Hartford under the policy. After Hartford and its retained accountants advised Aresty International that the pre-bill worksheets were not the proper format for submitting Extra Expense claims, Aresty International transferred the recorded time to Excel invoices, which did contain hourly rates that Aresty International determined to be reasonable for calculating the incurred expense of the cleaning-up and relocation effort. Answering further, Aresty International denies that Aresty and Breines charged a single or uniform hourly rate in connection with the clean-up and relocation effort, and further denies that they ever represented such rates to be those normally charged for legal work. Aresty and Breines determined the rates to charge for the clean-up and relocation by reference to the rates typically charged by third parties performing similar work, and then set their rates at levels significantly below such typically charged rates.

5.     Aresty International admits that the pre-bill worksheets also documented the time expended by Michelle Sadon, an independent contractor of Aresty International, in the clean-up and relocation of the business premises. Aresty International denies that the pre-bill worksheets purported to represent the hourly rates at which Sadon's time would be charged to Hartford under the policy. After Hartford and its retained

accountants advised Aresty International that the pre-bill worksheets were not the proper format for submitting Extra Expense claims, Aresty International transferred Sadon's recorded time to Excel invoices, which did contain hourly rates that Aresty International determined to be reasonable for calculating the incurred expense of cleaning up and relocating the business premises. Answering further, Aresty International denies that Sadon charged a single or uniform hourly rate in connection with the clean-up and relocation effort. Sadon's rates were determined by reference to the rates typically charged by third parties performing similar clean-up and relocation work, and were set at levels significantly below such rates. Aresty International denies the balance of the allegations contained in paragraph 5 of the Counterclaim.

6.     No response is required to paragraph 6 of the Counterclaim, which merely purports to assert a legal conclusion about Hartford's coverage obligations under the policy. To the extent that a response is required, Aresty International lacks sufficient knowledge or information to admit or deny an allegation concerning the knowledge possessed by Mr. Berman.

7.     Aresty International denies that the allegations contained in paragraph 7 of the Counterclaim accurately depict the nature of the communications between Hartford, its retained accountants, and Aresty International. Answering further, Aresty International states that Hartford and its retained accountants advised Aresty International that the pre-bill worksheets provided in support of its clean-up and relocation expenses were not a proper format for submitting such claims. Hartford and its accountants advised that a different and more detailed format was necessary to process such claims.

8.    Aresty International denies the allegations contained in paragraph 8 of the Counterclaim. Answering further, Aresty International states that the invoices provided in support of its clean-up and relocation expenses were created in response to Hartford's and its accountants' advisement that such claims required a different and more detailed format in order to be processed.

9.    Aresty International denies the allegations contained in paragraph 9 of the Counterclaim. Answering further, Aresty International states that the "second set of documents" referenced in paragraph 9 refers to the invoices that Aresty International provided in support of its clean-up and relocation expenses at the advisement of Hartford and its retained accountants.

10.    Aresty International denies the allegations contained in paragraph 10 of the Counterclaim and each of its subparts.

10(a).    Answering further, Aresty International states that the invoice referenced in subparagraph 10(a) of the Counterclaim contained exactly the same information that Aresty International had previously provided in its pre-bill worksheets, which Hartford and its accountants advised constituted an improper format for submitting Extra Expense claims.

10(b).    Answering further, Aresty International states that the invoice referenced in subparagraph 10(b) of the Counterclaim contained exactly the same information that Aresty International had previously provided in its pre-bill worksheets, which Hartford and its accountants advised constituted an improper format for submitting Extra Expense claims.

10(c).  Answering further, Aresty International denies that invoices were submitted on behalf of "Richard Breines." No response is required to the balance subparagraph 10(c), which merely purports to assert a legal conclusion about Hartford's coverage obligations under the policy. To the extent that a response is required, Aresty International denies the allegations.

10(d).  Answering further, Aresty International denies that Aresty and Breines characterized and charged their clean-up and relocation efforts as "legal services" not subject to a sales tax in Massachusetts.

10(e).  Answering further, Aresty International admits that the invoices were created by use of Excel software on Aresty International's computers in an effort to reformat the information in support of its Extra Expense claims, as requested by Hartford and its accountants. Aresty International denies the balance of the allegations contained in subparagraph 10(e) of the Counterclaim.

11.    Aresty International admits that Hartford advanced forty-five thousand dollars ($45,000.00) under the policy. Aresty International lacks sufficient knowledge to admit or deny that Hartford relied on certain materials and representations in advancing the $45,000.000.

## COUNT I
### (Fraud)

12.    Aresty International repeats and incorporates by reference its answers to paragraphs 1 through 11 of the Counterclaim.

13.    Aresty International denies the allegations contained in paragraph 13 of the Counterclaim and each of its subparts.

14.      Aresty International lacks sufficient knowledge or information to admit or deny that Hartford relied on certain representations in advancing the $45,000.00 under the policy, as alleged in paragraph 14 of the Counterclaim.

15.      Aresty International denies the allegations contained in paragraph 15 of the Counterclaim.

16.      Aresty International denies the allegations contained in paragraph 16 of the Counterclaim.

### COUNT II
### (Misrepresentations)

17.      Aresty International repeats and incorporates by reference its answers to paragraphs 1 through 16 of the Counterclaim.

18.      Aresty International denies the allegations contained in paragraph 18 of the Counterclaim and each of its subparts.

19.      Aresty International denies the allegations contained in paragraph 19 of the Counterclaim.

20.      Aresty International denies the allegations contained in paragraph 20 of the Counterclaim.

21.      Aresty International denies the allegations contained in paragraph 21 of the Counterclaim.

### FIRST AFFIRMATIVE DEFENSE

The allegations contained in the Defendant's Counterclaim fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Defendant is estopped from asserting fraud and misrepresentation due to Defendant's representations that Aresty was required to submit reformatted invoices in support of the Extra Expense claims. Aresty relied upon the Defendant's representations in this regard in submitting the invoices, said reliance forming the basis of the Defendant's claims of fraud and misrepresentation.

WHEREFORE, Aresty International Law Offices, P.C., respectfully requests that this Court:

A.    Dismiss Defendant's Counterclaim in its entirety; and

B.    Award Aresty International attorneys' fees, costs and expenses in this

       action, together with such other relief as this Court deems just and proper.

Respectfully submitted,

ARESTY INTERNATIONAL LAW OFFICES, P.C.

By its attorney,

James T. Hargrove (BBO# 550975)
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
617-482-1776

Dated: January 26 , 2005