# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARESTY INTERNATIONAL LAW OFFICES, P.C. <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD FIRE INSURANCE COMPANY <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    CASE NO. 04-12532 RWZ <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF DEPOSITIONS

**TO:**  Michael F. Aylward, Esq.
Morrison Mahoney
250 Summer Street
Boston, MA 02210

PLEASE TAKE NOTICE that in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, plaintiff Aresty International Law Offices, P.C., by its attorneys, will take the deposition upon oral examination of Hartford Fire Insurance Company ("Hartford"), by the officer, director, managing agent or other person designated by Hartford as having the most knowledge concerning the subject matters listed on Schedule A attached hereto, on Monday, June 13, 2005, at 9:30 a.m. The deposition will take place at the offices of Morrison Mahoney, One Constitution Plaza, Hartford, CT, before a Notary Public or other officer duly authorized to administer oaths. The deposition will continue from day to day until completed. You are invited to attend and examine the witness.

ARESTY INTERNATIONAL
LAW OFFICES, P.C.

By its attorneys,

James T. Hargrove (BBO# 550975)
Derek B. Domian (BBO# 660568)
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776

Dated: June 8, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2005, I served a true and accurate copy of the foregoing document on the following counsel of record for the defendant:

Michael F. Aylward, Esq.
Morrison Mahoney
250 Summer Street
Boston, MA 02210

Derek B. Domian

## SCHEDULE A

Examination is requested concerning the subject matters described below. Pursuant to Fed. R. Civ. P. 30(b)(6), you are required to designate the one or more officers, directors, managing agents, or other persons having the most knowledge concerning the subject matters described below.

## Definitions and Instructions

The following Definitions and Instructions shall apply to this Schedule A:

1.      "Hartford," "you," and "your" refer to defendant Hartford Fire Insurance Company, its attorneys, agents, parents, affiliates, subsidiaries, officers, directors, employees, representatives and any other persons or entities acting on its behalf;

2.      "Aresty International" refers to plaintiff Aresty International Law Offices, P.C., its attorneys, agents, affiliates, shareholders, managers, employees, representatives, and any other persons or entities acting on its behalf;

3.      "Policy" refers to the business insurance policy purchased in December 2002 by Aresty International.

4.      "Communication" includes any and all means of display or transmission of data, ideas, or other information, whether oral, written, electronic, or otherwise, as well as any note, memorandum or other record thereof.

5.      "Business premises" refers to the business premises of Aresty International located at 107 Union Wharf, Boston, Massachusetts, and covered by the business insurance policy.

## Subject Matters for Examination

1.      The terms and conditions of the Policy.

2.    Aresty International's claims for coverage under the Policy, including but not limited to its claim for coverage for Extra Expenses.

3.    Any and all communications concerning or relating to Aresty International's claims for coverage under the Policy, including but not limited to communications concerning or relating to its claim for coverage for Extra Expenses.

4.    Hartford's denial of Aresty International's claims for coverage under the Policy.

5.    Hartford's allegation that Aresty International submitted forged and false documentation in support of its claim for Extra Expenses.

6.    Hartford's allegation that Aresty International engaged in fraud and concealment of material facts during the course of its presentation of claims.

7.    Hartford's allegation that Aresty International willfully and intentionally exaggerated the extent of loss.

8.    Hartford's use of and/or reliance on outside consultants, including but not limited to Carey & Co. and any other forensic accountants, relating to Aresty International's claims for coverage under the Policy.

9.    Hartford's examinations under oath of Aresty International relating to its claims for coverage.

10.    Hartford's rejection of the Sworn Statements in Proof of Loss submitted by Aresty International, along with Hartford's position that it did not necessarily agree with the statement of loss contained in the Sworn Statements.

11.     Any and all underwriting manuals or policies, including all guidelines relating to underwriting, prepared or used by Hartford from December 1, 2002 to the present.

12.     Any and all claims manuals or policies, including all guidelines relating to the handling of claims, prepared or used by Hartford from December 1, 2002 to the present.

13.     Any and all inspections of the business premises performed by or on behalf of Hartford.

1    A.    Anything over $100,000, or anything with

2          reserves over $100,000.

3    Q.    And are you aware of whether or not a particular

4          loss is going to require a large loss report at

5          the time it's assigned to you?

6    A.    At the very instant that it's assigned to me, I

7          wouldn't have that information.

8    Q.    And who makes the determination that a large

9          loss report is required?

10   A.    Me.

11   Q.    Do you understand the concept of settlement

12         authority?

13   A.    Yes.

14   Q.    And in 2003, in calendar year 2003, did you have

15         settlement authority?

16   A.    Yes.

17   Q.    And what was that authority?

18   A.    $100,000.

19   Q.    Did you have the authority in 2003 to deny

20         coverage?

21   A.    No.

22   Q.    Who did?

23   A.    Bob Percopo.

24   Q.    Who did Mr. Percopo report to?

**DEPOSITION OF JOHN E. PERRY**

| | | |
|---|---|---|
| 1 | A. | Sam Rizzitelli. |
| 2 | Q. | And where is Mr. Rizzitelli located? |
| 3 | A. | He is located at home office in Hartford, |
| 4 | | Connecticut. |
| 5 | Q. | And what is his position? |
| 6 | A. | Home office consultant.  Also, Jim Howard was |
| 7 | | his direct supervisor at that time. |
| 8 | Q. | Mr. Howard was Mr. Rizzitelli's supervisor? |
| 9 | A. | No. |
| 10 | Q. | The other way around? |
| 11 | A. | No, sorry. |
| 12 | | Bob Percopo would report to home office, |
| 13 | | to Sam Rizzitelli, on occasion, and also Jim |
| 14 | | Howard was his direct supervisor in the Shelton, |
| 15 | | Connecticut office. |
| 16 | Q. | Okay. |
| 17 | | Jim Howard then became a consultant? |
| 18 | A. | Yes.  I know, it's confusing. |
| 19 | Q. | Not particularly. |
| 20 | A. | It's confusing for me. |
| 21 | Q. | I've seen worse structures. |
| 22 | | At the time, in 2003, did you have the |
| 23 | | authority to retain experts? |
| 24 | A. | No. |

**DEPOSITION OF JOHN E. PERRY**

|    |    |    |
|----|----|----|
| 1  |    | commonly called authority to settle with The |
| 2  |    | Hartford? |
| 3  | A. | Yes. |
| 4  | Q. | And what is your authority to settle? |
| 5  | A. | $10,000. |
| 6  | Q. | And do you have authority to deny a claim? |
| 7  | A. | Not -- I have to go to a supervisor with |
| 8  |    | recommendations. |
| 9  | Q. | In 2003, at the time of the Aresty loss, who was |
| 10 |    | your supervisor? |
| 11 | A. | Bob Percopo. |
| 12 | Q. | And does he remain your supervisor? |
| 13 | A. | No.  Bob is currently the manager, so he got |
| 14 |    | promoted.  But at the time, I believe in this |
| 15 |    | case, he was still my supervisor. |
| 16 |    | Since I've been in that property |
| 17 |    | division, I've had like four different |
| 18 |    | supervisors.  So I think that Bob was my |
| 19 |    | supervisor at the time. |
| 20 | Q. | And the file reflects a number of names.  I'm |
| 21 |    | just going to ask you briefly about them. |
| 22 | A. | Okay. |
| 23 | Q. | A Mr. Rizzitelli, can you tell me who he was? |
| 24 | A. | He is a home office consultant. |

**DEPOSITION OF FLOYD DRAPER**

**Rizzitelli, Sam (CLAIM, Claims)**

| | |
|---|---|
| From: | Rizzitelli, Sam (CLAIM, Claims) |
| Sent: | Monday, December 01, 2003 11:22 AM |
| To: | Perry, John E (CLAIM, Claims); Percopo, Robert J (CLAIM, Claims) |
| Cc: | Howard, Jim (CLAIM, Claims) |
| Subject: | RE: Aresty International, 843 F 33958, Denial Letter, |

John, Bob,

If we have proof that our insured intentionally presented an obviously inflated claim with the desire to obtain more than it was entitled, the whole policy should be considered void and no payments for any part of the claim should be made. Please confirm with local counsel that this jurisdiction follows this rule of law. Also, have this local attorney advise on whether we have a duty to report this fraud to the state insurance commission or any other legal authority.

Please ask our attorney to send the letter to our insured and send me a copy of the EUO transcript that implicates this insured in this fraud.

The underwriter should be put on risk alert, too.

Lastly, we should pursue any advance that we made.

This is a unique claim and I will keep a file open on it. Please keep me in the loop.

Thanks,
sam

-----Original Message-----
| | |
|---|---|
| From: | Perry, John E (CLAIM, Claims) |
| Sent: | Tuesday, November 25, 2003 3:27 PM |
| To: | Percopo, Robert J (CLAIM, Claims); Rizzitelli, Sam (CLAIM, Claims) |
| Cc: | Howard, Jim (CLAIM, Claims) |
| Subject: | RE: Aresty International, 843 F 33958, Denial Letter, |

Hi everyone, just wanted to add something to this, the insured has submitted proofs of losses for costs associated with valuable papers for $150,000. This is beyond the reserve. The insured has not expended anything to date for these costs, but the PA feels he is entitled to it anyway. Thanks, John

-----Original Message-----
| | |
|---|---|
| From: | Percopo, Robert J (CLAIM, Claims) |
| Sent: | Tuesday, November 25, 2003 3:23 PM |
| To: | Rizzitelli, Sam (CLAIM, Claims) |
| Cc: | Perry, John E (CLAIM, Claims); Howard, Jim (CLAIM, Claims) |
| Subject: | FW: Aresty International, 843 F 33958, Denial Letter, |
| Importance: | High |

Sam,

Before we send out the attached denial letter I wanted to run the scenario by you.

We have a law firm who basically falsified invoices in order to pad their claim submission. We went the EUO route with them and they admitted that this was indeed what occurred at the direction of their PA.

We gave them an opportunity to withdraw that aspect of their claim or amend their claim submission and they refused. As such, counsel drafted the attached claim denial for our review

1

and approval.

Since this is a law firm and the claim while not huge does involve some significant figures [current reserve key and companion is 131k] I thought it would be prudent to allow you to review this before we pull the proverbial trigger here.

Please review and let us know if you agree with proceeding.

Bob

------Original Message------
From:    Perry, John E (CLAIM, Claims)
Sent:    Tuesday, November 25, 2003 1:58 PM
To:      Percopo, Robert J (CLAIM, Claims)
Subject: Aresty International, 843 F 33958, Denial Letter,

Hi Bob, please see draft done by counsel, thanks, John << File: Aresty Denial, MMM.doc >>

2

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

| | |
|---|---|
| **MASSACHUSETTS** | **CONNECTICUT** |
| BOSTON | HARTFORD |
| FALL RIVER | **NEW YORK** |
| SPRINGFIELD | NEW YORK |
| WORCESTER | **NEW JERSEY** |
| **RHODE ISLAND** | PARSIPPANY |
| PROVIDENCE | **ENGLAND** |
| | LONDON |

Michael F. Aylward
Direct Dial: (617) 439-7556
Direct Fax: (617) 342-4913
maylward@morrisonmahoney.com

June 10, 2005

**BY HAND DELIVERY**

James T. Hargrove, Esquire
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA  02110

Re:    **Aresty International Law Offices, P.C.**
       **v. Hartford Fire Insurance Company**
       **U.S. District Court, Docket No.:  04-12532 RWZ**
       **Our File No.:  10017102**

Dear Jim:

Per your request, I'm enclosing a complete set of the Hartford Home Office file as you had indicated that you wished to have it Bates-stamped for some purpose. The file comprises those documents that were e-mailed to you earlier this week along with the mini-scripts of your clients' examinations under oath, which I did not enclose at the time as you already have them.

I am also in receipt of your inquiry with respect to whether Hartford proposes to designate Mr. Percopo as the person most knowledgeable with respect to your 30(b)(6) Notice. Hartford will not be presenting a witness in response to this Notice as you have already taken the depositions of anyone with factual knowledge concerning this claim.

Please call me if you have any questions concerning the foregoing. Otherwise, I look forward to seeing you in Hartford on Monday.

Very truly yours,

Michael F. Aylward

MFA/jdn
Enclosure

HART 0681

A.    I do not believe it was issued at this time.

Q.    And as a result, or I think you testified
      earlier that you did not have the authority to
      deny this claim, correct?

A.    Correct.

Q.    And that would have been Mr. Percopo, correct?

A.    Yes.

Q.    Can you tell me whether or not Mr. Percopo or
      yourself received any opinion, written opinion
      from counsel, with respect to this claim?

A.    I don't know if we did or not.

Q.    Do you recall receiving a written opinion from
      counsel with respect to this claim?

A.    I can't recall.

Q.    And do you know, did you forward to
      Mr. Rizzitelli the EUO transcript that he
      indicates that he would like to have?

A.    I don't know if I did.

Q.    Do you know whether Mr. Percopo had received a
      copy of the EUO transcript?

A.    I don't know.

           MR. HARGROVE:   Now, we get to something
      that you're actually going to have to mark as an
      exhibit.

**DEPOSITION OF JOHN E. PERRY**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARESTY INTERNATIONAL LAW OFFICES, P.C. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CASE NO. 04-12532 RWZ |
| HARTFORD FIRE INSURANCE COMPANY | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL THE DESIGNATION OF WITNESSES PURSUANT TO FED.R.CIV.P. 30(b)(6) AND FOR EXPENSES AND SANCTIONS UNDER FED.R.CIV.P. 37(a) AND (d)

Plaintiff Aresty International Law Offices, P.C. ("Aresty"), seeks to compel the defendant Hartford Fire Insurance Company ("Hartford") to designate an adequate Rule 30(b)(6) witness or witnesses under Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure, and for expenses and sanctions for the Hartford's failure to make this designation under Rule 37(a)(4) and (d). Aresty's request for relief arises from an unsuccessful three month effort to secure one or more persons capable of offering testimony on designated subject matters on the Hartford's behalf. The extent of the Hartford's response has been to make available three witnesses who have each disclaimed knowledge of subject matters identified in Aresty's Rule 30(b)(6) notice. The Hartford has since taken the position that it will not make any Rule 30(b)(6) designation, despite the obvious lack of competent Rule 30(b)(6) testimony on subject matters critical to the underlying litigation. The Hartford's failure to designate adequate 30(b)(6) witnesses has already resulted in two postponements of the trial, and with a status conference between the

parties scheduled for July 13, 2005, Aresty seeks immediate relief from the Court to allow it to complete discovery in time for the next trial date.

## BACKGROUND

Aresty commenced the underlying action against the Hartford on December 2, 2004 for unfair settlement practices in the Hartford's adjustment and denial of Aresty's claims for coverage under the parties' business insurance policy. Aresty's claims for coverage arose from substantial water damage to Aresty's business premises on April 19, 2003 caused by interior flooding. In connection with this damage, Aresty presented claims for (1) business personal property, (2) computers, media, debris removal, valuable papers and records, (3) personal effects, (4) extra expense, (5) business income, and (6) law library.

The Hartford assigned Aresty's claims for coverage to Floyd Draper, a company claims adjuster. In July 2003, the Hartford reassigned Aresty's claims from Draper to John Perry, another company claims adjuster who had been handling a separate aspect of the loss caused by the flooding. During the course of adjusting Aresty's claims, both Draper and Perry directly reported to Robert Percopo, who served as their supervisor throughout the adjustment of the claims and currently serves as a claims operation manager for the Hartford.

On December 2, 2003, after making only nominal payments of Aresty's claims, the Hartford denied Aresty's claims in full. The Hartford based this denial on allegations that Aresty had presented forged and false invoices in support of its claim for extra expense. The Hartford's denial concluded seven months of an inexplicably difficult and opaque adjustment process, in which representatives of the Hartford misread and misapplied pertinent provisions of Aresty's insurance policy, took unjustified positions with respect to Aresty's claims prior to making a

reasonable investigation of information provided to them, and failed to communicate the bases for the positions they were taking.

Subsequent to the denial, on August 23, 2004, Aresty made a formal demand for relief under M.G.L. c. 93A, §2 and §11.  The Hartford responded on September 20, 2004, by simply repeating without supporting or explicating the positions it took in its denial letter.

On December 2, 2004, Aresty filed its complaint alleging breach of contract, violations of M.G.L. c. 93A, 2 and 11, and seeking a declaration of its right to payment under the insurance policy.  On January 18, 2005, the Hartford filed its answer, in which it denied liability under each of Aresty's claims, and added affirmative defenses and counterclaims for fraud and misrepresentation on the basis of the alleged forged an false invoices presented by Aresty.

On February 22, 2005, the Court held an initial Pretrial Conference, in which counsel for both Aresty and the Hartford agreed to a full trial on the claims raised by the pleadings.  Counsel also agreed to an expedited trial date of April 18, 2005.  Given the short trial deadline, counsel understood the need to conduct prompt and streamlined discovery.  At the initial Pretrial Conference, counsel for Aresty indicated the need to conduct the deposition of the persons responsible for adjusting and denying Aresty's claims.  Counsel for the Hartford represented to the Court the need to conduct minimal discovery beyond the documentation already presented to the Hartford during the course of the seven month adjustment of Aresty's claims.

Because Aresty's file identified Floyd Draper and John Perry as the persons responsible for adjusting the claims, on March 4, 2005, Aresty noticed their depositions in accordance with the Federal Rules.  At the same time, Aresty also noticed the deposition of Carey & Company, the forensic accounting firm retained by the Hartford to assist in the adjustment and analysis of Aresty's claims; and, under Rule 30(b)(6), the person designated by the Hartford as having the

most knowledge concerning, among other identified subject matters, "Hartford's denial of Aresty International's claims for coverage under the Policy."  See Exhibit A.  Aresty noticed these depositions for mid to late March.

On March 18, 2005, counsel for the Hartford filed a motion to continue the trial date on account of a scheduling conflict.  The trial date was moved from April 18 to May 16, 2005.

The Hartford made John Perry available for deposition on April 5, 2005, and Floyd Draper on April 12 and 21.  At this time, counsel for the Hartford represented that Perry and Draper qualified as the persons having the most knowledge concerning the subject matters pertinent to the underlying litigation.  During the course of deposing Perry and Draper, however, it became clear that they did not have the authority to deny Aresty's claims.  It also became clear that neither of them had knowledge of the process by which the Hartford came to deny Aresty's claims.  Rather, both testified that another person, Robert Percopo, had sole authority to deny the claims.[1]  Mr. Percopo, in turn, apparently reported to Sam Rizzitelli, a home office manager at the Hartford.  This testimony confirmed information in the Hartford's claims files, which were produced in connection with the depositions, that Robert Percopo and Sam Rizzitelli had coordinated and ultimately executed the Hartford's denial of Aresty's claims.[2]

---

[1] See Exhibit B, Deposition of John Perry at 17:
      Q: Did you have the authority in 2003 to deny coverage?
      A: No.
      Q: Who did?
      A: Bob Percopo.
See Exhibit C, Deposition of Floyd Draper, Volume I, at 25:
      Q: And do you have authority to deny a claim?
      A: Not-- I have to go to a supervisor with recommendations.
      Q: In 2003, at the time of the Aresty loss, who was your supervisor?
      A: Bob Percopo.

[2] In particular, Mr. Perry's claim file contained an email thread between John Perry, Robert Percopo, and Sam Rizzitelli from November 25 to December 1 concerning the Hartford's denial of Aresty's claims.  In the critical communication, Mr. Percopo wrote to Mr. Rizzitelli on November 25, 2003:
      Before we sent out the attached denial letter I wanted to run the scenario by you.  We
      have a law firm who basically falsified invoices in order to pad their claim submission.

In response to this disclosure, on April 7, 2005, counsel sent a letter to the Hartford requesting the deposition of Percopo and Rizzitelli pursuant to Hartford's 30(b)(6) obligations. In the letter, Aresty also requested the disclosure of any files and records in the position of Messrs. Percopo and Rizzitelli upon which they may have relied in reaching the decision to deny Aresty's claims.  Given the short trial deadline, Aresty asked that this discovery be made available within a reasonable time period.  The Hartford never responded to these requests, other than to represent that it would inquire into the availability of Percopo and Rizzitelli for deposition.

On at least three additional occasions, from April 15 to May 27, 2005, Aresty provided the Hartford's counsel with follow-up requests for the scheduling of Percopo and Rizzitelli's depositions.  Although the Hartford never indicated that it would not make them available for deposition, and although it never suggested any objections to their depositions, the Hartford failed to offer a definitive response to any of these requests.

On May 11, 2005, Aresty and the Hartford filed a joint motion to continue the trial date of May 16, 2005 on grounds that the parties had been unable to complete discovery.  In their motion, counsel for both parties specifically identified the deposition of Percopo as an outstanding discovery issue to be resolved prior to trial.  The trial date was continued from May 16, 2005 to June 6, 2005.

Nonetheless, the Hartford continued to evade Aresty's requests for an adequate 30(b)(6) witness.  The Hartford switched from not responding to Aresty's requests to making a 30(b)(6)

---

We went the EUO route with them and they admitted that this was indeed what occurred at the direction of their PA.  We gave them an opportunity to withdraw that aspect of their claim or amend their claim submission and they refused.  As such, counsel drafted the attached claim denial for our review and denial.  Since this is a law firm and the claim while not huge does involve some significant figures, I thought it would be prudent to allow you to review this before we pull the proverbial trigger.
See Exhibit D.

witness conditional on variously stated grounds, including Aresty making its own representatives available for deposition and providing additional "automatic disclosures" to the Hartford. Although Aresty's counsel secured dates and times at which Aresty's representatives would be available for deposition, the Hartford never expressed a real interest in carrying through with their depositions. Finally, in response to the Hartford's evasiveness, Aresty formally noticed the deposition of Percopo on May 27 for June 2, 2005, two business days prior to the then-trial date of June 6. On May 31, Hartford's counsel responded by explaining that he had been out office but would check on Percopo's availability.

Mr. Percopo failed to appear for his deposition on June 2, 2005. The Hartford never advised Aresty's counsel that Percopo would not be coming, nor did it explain or otherwise defend his absence. Given the importance of Percopo's testimony to Aresty's underlying claims for unfair settlement practices—as well as the Hartford's claims for fraud and misrepresentation—Aresty's counsel filed an emergency motion to continue the trial date of June 6, 2005. The emergency motion also sought any additional relief to compel the Hartford to observe its discovery obligations.

On June 2, 2005, the Court granted Aresty's emergency motion. The Court also scheduled a status conference for July 13, 2005. In light of these events, the Aresty renewed its efforts to compel the deposition of Percopo or someone with comparable knowledge of the outstanding 30(b)(6) subject matters. The Hartford finally agreed to make Percopo available for deposition, at the Hartford's counsel office in Hartford, Connecticut, on June 13. Prior to the deposition, Aresty sought to confirm that the Hartford would be making Percopo available pursuant to Aresty's original Rule 30(b)(6) notice of deposition. The Hartford first responded by incredibly denying knowledge of the receipt of such notice. When Aresty provided the Hartford

with a re-executed version of the original 30(b)(6) notice to confirm Percopo's upcoming deposition, the Hartford responded more incredibly by stating that it would not be "presenting a witness in response to this Notice as you have already taken the depositions of anyone with factual knowledge concerning this claim." See Exhibit E. On June 13, Aresty's counsel took the deposition of Percopo without a Rule 30(b)(6) designation.[3]  Furthermore, just as the two claims adjusters had done previously, Percopo disclaimed full knowledge of, and ultimate responsibility over, the Hartford's denial of Aresty's claims.  Percopo passed the buck this time to Rizzitelli, whom the Hartford also refuses to designate as a Rule 30(b)(6) deponent.

Aresty now seeks to compel the designation of a knowledgeable witness pursuant to the Hartford's Rule 30(b)(6) obligations, which the Hartford continues to openly flout by forcing Aresty's counsel to undertake multiple depositions before learning the identity of the person with the most knowledge concerning subject matters originally sought by Aresty over three months ago, and further by taking the untenable position that, having undertaken multiple depositions and discovering the need to take yet another, the Hartford will not designate any deponent to speak on its behalf.

## ARGUMENT

I.  **The Hartford's Failure to Designate a Knowledgeable Witness to Testify Violates the Unequivocal Command of Rule 30(b)(6)**

Rule 30(b)(6) provides that the Hartford "*shall* designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf."  Despite the Rule's clear and mandatory language, the Hartford has stated that it will not make this designation.  The

---

[3] On the day of the deposition of Mr. Percopo, counsel for Aresty, James Hargrove, conferred with the Hartford's counsel, Michael Aylward, pursuant to Aresty's obligations under Rule 37 and Local Rule 37.1, in a good faith effort to resolve the present controversy over the Hartford's failure to designate an adequate Rule 30(b)(6) witness. Because Aresty's counsel believed that the position the Hartford took in its June 10 letter, see Exhibit E, was in clear violation of the language of Rule 30(b)(6), counsel brought a copy of the Rule to the deposition.  Even after discussing the language of the Rule, however, the Hartford refused to change its position set forth in the June 10 letter.

Hartford's open refusal to designate an adequate Rule 30(b)(6) witness "violates the unequivocal command" of Rule 30(b)(6) and is "literally inexcusable under the Federal Rules of Civil Procedure." Bregman v. District of Columbia, 182 F.R.D. 352, 355 (D.D.C. 1998).

When the Hartford received Aresty's notices of deposition, the Harford came under the obligation either to comply with the discovery demand or seek a protective order under Rule 26(c). See Mitsui & Co., Inc. v. Puerto Roc Water Resources Authority, 93 F.R.D. 62, 66 (D.P.R. 1981) ("The notice alone is enough to compel the corporation to comply."); Wright and Miller, Federal Practice and Procedure, § 2103 (2d ed. 1994). The Hartford did neither. The Hartford therefore lacks standing to defend its failure to make the required designation. See Fed.R.Civ.P. 37(d) ("The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)."); see also Bregman, 182 F.R.D. at 355 (compelling designation of 30(b)(6) deponent where company failed to comply with notice of deposition or move for a protective order).

Even if the Hartford did have standing to defend its Rule 30(b)(6) performance, the Hartford cannot show that it satisfied its Rule 30(b)(6) obligations. The Hartford would have to insinuate—because it has never so stated—that it intended the depositions of Perry and Floyd to satisfy its obligations under Rule 30(b)(6). For one, the Hartford has never acknowledged or articulated this intent to Aresty, therefore defeating one of the major purposes of the Rule, which is to afford Aresty the opportunity to depose persons whom Aresty—and the Hartford, and its designees—appreciate to be testifying on the Hartford's behalf. The closest the Hartford has ever come to suggesting such an intent was in its June 10 correspondence, in which the Hartford

stated, in defense of its refusal to make a Rule 30(b)(6) designation, that Aresty had "already taken the depositions of anyone with factual knowledge concerning this claim."

The opportunity to depose a witness as to "factual knowledge," however, is something entirely different from the opportunity to depose a witness who purports to speak on the behalf of the company. Rule 30(b)(6) requires the Hartford to designate persons who will offer binding testimony on its behalf. See Resolution Trust Corp. v. S. Union Co., Inc., 985 F.2d 196, 197 (5th Cir. 1993) ("when a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent."). A fact witnesses simply testifies from personal knowledge, without purporting to offer binding testimony on the company's behalf. If the Hartford indeed understands Perry and Draper to have offered testimony as to their own factual knowledge, the testimony does not bind Hartford. Rule 30(b)(6) prevents precisely this type of evasion and illusion by which the Hartford can seemingly put on testimony without ever becoming bound by it. Aresty is entitled to know the company's position prior to trial, and to inquire into that position by deposing the persons who purport to speak on the Hartford's behalf.

Moreover, even if the Hartford could somehow qualify Perry and Floyd as Rule 30(b)(6) deponents in retrospect, they would still fail to meet the requirements of adequate Rule 30(b)(6) designees. The obligations placed by Rule 30(b)(6) on the Hartford call for more than two impromptu designations of witnesses who declined to offer testimony on essential subject matters identified in the notice of deposition. Under Rule 30(b)(6), a company must (1) designate *one or more knowledgeable persons* to testify on the subject matter designated by the examining party; (2) *designate more than one deponent* if it would be necessary to do so in order to respond to the designated subject matter; (3) *prepare* each designee to testify on the matters known by the designee, or that should be reasonably known by the company; and (4) *substitute*

9

*an appropriate deponent* once it becomes obvious that prior designees lacked adequate knowledge of relevant subject matter. See Alexander v. FBI, 186 F.R.D 137 (D.D.C. 1998). The Hartford has failed under each of these obligations.

The Hartford has failed to designate one or more knowledgeable persons to testify on critical subject matters identified by Aresty. In its original and re-executed versions of the Rule 30(b)(6) notice, Aresty requested the Hartford to designate persons with knowledge of "the Hartford's denial of Aresty International's claims for coverage under the Policy." As Perry and Draper ultimately disclaimed knowledge of, and control over, the Hartford's denial of Aresty's claims, deferring instead to their supervisor Percopo, and more vaguely to his supervisor Rizzitelli, the Hartford cannot plausibly contend that either deponent purported to offer 30(b)(6) testimony on these subjects, let alone competent testimony. The Hartford cannot simply decline to take a position with respect to this essential subject matter. Aresty's claim for unfair settlement practices ultimately rests on allegations that the Hartford—and whoever acted on the Hartford's behalf—denied Aresty's claims without undertaking a reasonable investigation of them and without adequate information. Neither Perry or Draper, however, was willing to offer testimony on exactly what information the purported decisionmakers had in deciding to deny resty's claims.[4]

---

[4] See Exhibit F, Deposition of John Perry at 138:
   Q: Can you tell me whether or not Mr. Percopo or yourself received any opinion, written opinion from counsel, with respect to this claim?
   A: I don't know if we did or not.
   Q: Do you recall receiving a written opinion from counsel with respect to this claim
   A: I can't recall
   Q: And do you know, did you forward to Mr. Rizzitelli the EUO transcript that he indicates that he would like to have?
   A: I don't know if I did.
   Q: Do you know whether Mr. Percopo had received a copy of the EUO transcript?
   A: I don't know.

Indeed, now that Aresty has had the opportunity to depose Mr. Percopo, it remains entirely unclear who at the Hartford actually made this decision to deny.[5]

Moreover, the bare act of putting before Aresty two impromptu Rule 30(b)(6) witnesses does not relieve the Hartford from designating *additional* 30(b)(6) witnesses once they become necessary. Rule 30(b)(6) is utterly contrary to the Hartford's "take it or leave it" posture. Even if Perry and Draper provided 30(b)(6) testimony on matters immediately familiar to them, the Hartford must still designate the "one or more" persons capable of offering testimony on the remaining subject matters identified in Aresty's notice of deposition. See Fed.R.Civ.P. 30(b)(6); see also Caltzatuficiio v. Fabiano Shoe Company, Inc., 201 F.R.D. 33, 36 (D.Mass. 2001) ("Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for *each* listed subject area and produce that designee as noticed.") (emphasis added). Once it became apparent that neither Perry nor Draper could offer competent testimony on the Hartford's denial of Aresty's claim, the Hartford came under an immediate obligation to designate the persons who could. See Resolution Trust Corp. v. Southern Union Co., Inc., 985 F.2d 196, 97 (5th Cir. 1993) ("company has duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry."); Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("Even if defendant in good faith thought that the claims director would satisfy the deposition notice, it had a duty to substitute another person once the deficiency of its Rule 30(b)(6) designation became apparent"); Wright and Miller, § 2103 ("If in the course of

---

[5] To the extent that the two claims adjusters have declined to offer testimony on the thought process by which the Hartford came to deny Aresty's claims, they have also failed to offer testimony on several other critical subject matters contained in the notice of deposition, all of which, in some way, would have been opinions and conclusions reached by the persons actually making the decision to deny. See item 5 ("Hartford's allegation that Aresty International submitted forged and false documentation in support of its claim for Extra Expense"); item 6 ("Hartford's allegation that Aresty International engaged in fraud and concealment of material facts during the course of its presentation of claims"); and item 7 ("Hartford's allegation that Aresty International willfully and intentionally exaggerated the extent of loss").

taking the deposition it becomes apparent that the person or persons designated are not able to provide testimony on the matters specified in the notice, it is the duty of the corporation immediately to make a new designation substituting someone who can give the needed testimony.").  By refusing to make this designation, the Hartford has left large gaps in the company's testimony on critical subject matters.

Not only were the Hartford's previous designations inadequate, they were disingenuous. If the Hartford were serious about meeting its Rule 30(b)(6) obligations through the testimony of Perry and Draper, the Hartford would have had to prepare them to "answer fully, completely, unevasively, the questions posed as to the relevant subject matters." Mitsui & Co., 93 F.R.D. at 67.  Furthermore, the Hartford would have had to prepare them on subjects beyond those "personally known to [the] designee or to matters in which [the] designee was personally involved." United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996).  It is clear, however, that the Hartford did not bother to prepare its witnesses to testify on subjects outside their immediate involvement in the adjustment of Aresty's claims.  During the course of their depositions, the testimony of Perry and Draper frequently bottomed out on personal knowledge. When pressed about the subject of the Hartford's denial of Aresty's claims, each deferred to their supervisor, whom they credited with sole authority to make denial decisions on the Hartford's behalf.  Even if this accurately describes the decisionmaking process at the Hartford, the Hartford cannot reinstitute this process in the discovery phase of litigation—the Hartford cannot impose upon Aresty the burden of having to depose one person after the other to determine what each person knows until the person with actual knowledge of the ultimate decision at issue is identified.  See Alexander, 186 F.R.D. at 141 (describing purpose of Rule 30(b)(6) as "preventing the serial depositions of various witnesses without knowledge within an organization

and eliminating 'bandying,' which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization"); <u>Resolution Trust</u>, 985 F.2d at 197 ("Rule 30(b)(6) streamlines the discovery process. It places the burden of identifying responsive witnesses for a corporation on the corporation."). Either the Hartford had to identify to Aresty knowledgeable witnesses at the outset of depositions, or it had to prepare its witnesses to offer responsive testimony on subject matters outside their personal knowledge. That the Hartford did neither demonstrates just how casually and superficially it has approached its Rule 30(b)(6) obligations.

For the same reasons, the recent deposition of Percopo fails to satisfy the Hartford's Rule 30(b)(6) obligations. For one, the Hartford refused to designate Percopo as a 30(b)(6) witness. As stated previously, the Hartford does not satisfy its obligation to offer binding testimony on the company's behalf by making available witnesses to testify as to personal knowledge. Furthermore, although Percopo had been identified by Perry and Draper as the person with authority to deny Aresty's claims, Percopo deferred in turn to another Hartford representative, Sam Rizzitelli, as the ultimate decisionmaker. Following the lead of Perry and Draper, Mr. Percopo declined to offer anything more than limited and incomplete testimony on this critical subject matter. As a result, Percopo could not purport to offer adequate Rule 30(b)(6) testimony, but simply continued the trend of forcing Aresty to move from one deposition to another in a bewildering search for someone capable of speaking to the Hartford's decision to deny Aresty's claims.

II.    **The Hartford's Failure to Designate an Adequate 30(b)(6) Witness Subjects It to Expenses and Sanctions Under Rule 37(a)(4) and (d)**

Aresty may seek relief for the Hartford's failure to designate an adequate Rule 30(b)(6) witness under Rule 37(a)(4) and (d). Rule 37(d) allows the discovering party to seek sanctions

13

where a party or person designated under Rule 30(b)(6) fails "to appear before the officer who is to take the deposition, after being served with proper notice." Fed.R.Civ.P. 37(d). An inadequate Rule 30(b)(6) designation amounts to a failure to appear. See Taylor, 166 F.R.D. at 363 ("Producing an unprepared witness is tantamount to a failure to appear."); Resolution Trust, 985 F.2d at 197 ("If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.").

The Hartford has either refused to make any Rule 30(b)(6) designation, or has produced witnesses who have each disclaimed knowledge of, and refused to offer testimony on, critical subject matters. The Hartford's performance clearly amounts to a failure to appear, which warrants the imposition of sanctions. Among the sanctions available under Rule 37(d), the Court may award costs and fees incurred by Aresty in deposing the inadequate 30(b)(6) witnesses and in finally identifying Mr. Rizzitelli as a person with knowledge of a duly noticed subject matter. See Resolution Trust, 985 F.2d at 198 (upholding under Rule 37(d) trial court's award of costs and fees incurred in deposing deficient 30(b)(6) deponents); see also Marker, 125 F.R.D. at 126 (court may grant similar relief under Rule 37(a)(4) for inadequate designation, including an order requiring "the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense."). Because the Hartford has so completely flouted its obligations under Rule 30(b)(6), forcing Aresty to assume the expense of an unnecessarily burdensome, protracted, and bewildering deposition campaign, the Hartford should be made to assume the expense of finally producing a proper Rule 30(b)(6) witness. The Hartford should not be permitted to benefit from making the Rule 30(b)(6) deposition more costly and expensive than it was designed to be.

14

Furthermore, the Hartford is not now in a position to excuse or justify its failure to make the required Rule 30(b)(6) designation.  "The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)."  Fed.R.Civ.P. 37(d). The order must be obtained before the date set for the discovery, and failure to move at that time precludes an objection later.  See Wright and Miller, § 2035; Mitsui & Co., 93 F.R.D. at 67.  The Hartford has never bothered to articulate its objection to Aresty's repeated Rule 30(b)(6) requests, let alone move for a protective order.  After three months of obstinacy, the Hartford cannot now seek to defend its discovery conduct in light of Aresty's requests for relief under Rule 37.

Finally, both Rule 37(a)(4) and (d) provides that the Court "shall" require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was "substantially justified or that other circumstances make an award of expenses unjust."  This plain language makes the award of reasonable expenses compulsory unless the Hartford satisfies its burden of showing substantial justification or other circumstances that would make the award unjust.  At the very least, the Hartford would have to show that reasonable persons could genuinely differ on whether a party in the Hartford's position was bound to comply with Aresty's discovery request. See Wright and Miller, § 2288.  As the Harford has failed to offer any explanation for its failure to make an appropriate Rule 30(b)(6) designation, there is simply no basis from which to infer the nature of the Hartford's objection, let alone determine its reasonableness.  Moreover, as discussed above, the Hartford's time for making such objections has already passed.  See Fed.R.Civ.P. 37(d).  If the Hartford wanted to insist that its position was substantially justified,

the only proper way to do so was by applying for a protective order.  Consistent with the Hartford's inexplicable course of evasion and obstruction, the Hartford never did so.

## <u>CONCLUSION</u>

WHEREFORE, Aresty respectfully requests that the Court grant its Motion for the following relief under Rule 37(a) and (d):

1.      An order compelling the Hartford to make an adequate designation under Rule 30(b)(6) of the person or persons having knowledge concerning the subject matters contained in the schedule of subject matters attached to Aresty's notice of deposition, and making such person or persons available for deposition, at the Hartford's expense, at a time prior to the parties' July 13, 2005 status conference;

2.      An order granting Aresty reasonable expenses, including attorney's fees, caused by the Hartford's failure to make a proper Rule 30(b)(6) designee available for deposition; and

3.      Any such further orders in regards to the Hartford's repeated failure to make a proper Rule 30(b)(6) witness available for deposition as the Court deems just and appropriate.

<div style="margin-left:40%">

ARESTY INTERNATIONAL
LAW OFFICES, P.C.

By its attorneys,

__/s/ James T. Hargrove_____
James T. Hargrove (BBO# 550975)
Derek B. Domian (BBO# 660568)
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776

</div>

Date: June 17, 2005