**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ———————————————— ) | |
| ARESTY INTERNATIONAL LAW OFFICES, ) | |
| P.C. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 04-12532 RWZ |
| ) | |
| ) | |
| HARTFORD FIRE INSURANCE COMPANY ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DESIGNATION OF PLAINTIFF'S PROPOSED EXPERT

Plaintiff, Aresty International Law Offices, P.C. ("Aresty"), hereby opposes the Defendant's Motion to Strike Designation of Plaintiff's Proposed Expert, Bruce Swerling. In support of its opposition, Aresty states (1) that the defendant's motion must be dismissed as premature for failure to satisfy the certification and conference requirements of Fed.R.Civ.P. 37(a)(2)(A) and Local Rule 37.1; and (2) that the proposed sanction of exclusion is severe and unwarranted where the defendant has deprived the parties of an opportunity to resolve the discovery dispute voluntarily, the conduct sought to be sanctioned is the direct result of defendant's own discovery practice, and the conduct is justified and has not compromised the defendant's discovery position any more than the expedited trial date has placed challenges on both parties' discovery positions.

## BACKGROUND

The defendant's motion to sanction Aresty's untimely expert disclosure follows on the heels of defendant's own dilatory discovery practice, which has contributed to three continuances of the trial date and two motions to compel by Aresty. Despite the defendant's current and understandable posture of urgency, the trial date has always loomed on the horizon, Aresty has numerous times urged the defendant to expedite discovery to accommodate both parties' discovery needs, and the defendant has just as many times declined. The defendant now seeks to exclude Aresty's expert disclosure for having unsuccessfully contended with this discovery practice.

Aresty commenced the underlying action on December 2, 2004 for unfair settlement practices in the Hartford's adjustment and denial of Aresty's claims for coverage under the parties' business insurance policy. On February 22, 2005, the Court held an initial Pretrial Conference, in which counsel agreed to an expedited trial date of April 18, 2005. The trial date gave the parties under sixty days to conclude both fact and expert discovery. Given the unusually brief discovery period, counsel understood the need to conduct prompt and streamlined discovery.

The Court never established a pretrial schedule with discovery deadlines, including deadlines for concluding fact discovery, designating expert witnesses, and producing expert reports for counter-designations and expert depositions. Instead, counsel used the April 18 trial date—well before the 90-day period set forth in the Federal Rules for making expert disclosures, for example—for establishing sensible discovery guideposts. To this extent, on March 4, 2005, Aresty commenced fact discovery by noticing the depositions of the two persons who, at the time, appeared primarily responsible for the adjustment of Aresty's claims. To expedite fact

discovery, Aresty also asked the defendant to designate a Rule 30(b)(6) deponent rather than serially depose the various managers and agents of the defendant for testimony on relevant subject matters. Aresty noticed these depositions for mid to late March, approximately two weeks before trial.

On March 18, counsel for the defendant filed a motion to continue the trial date on account of a scheduling conflict. The trial date was moved from April 18 to May 16, 2005.

The defendant made John Perry and Floyd Draper, the two claims adjusters, available for deposition on April 5, 2005 and April 12 and 21, 2005, respectively. At this time, counsel for defendant assured Aresty that Perry and Draper qualified as the persons having the most knowledge concerning the subject matters of the underlying litigation, including, importantly, the circumstances of the defendant's denial of Aresty's claims. During the course of their depositions, however, both purported to disclaim knowledge of, or control over, the process that led to the denial of Aresty's claims. In circuitous fashion, several additional persons at the Hartford were identified as having knowledge of this subject. Subsequent deposition of these persons produced not so much substantive testimony as additional finger pointing to others who were purported to have knowledge or control over the Hartford's denial. In a vain attempt to close this discovery loop, Aresty deposed John Perry's supervisor, Robert Percopo, and then Mr. Percopo's supervisor, Samual Rizzitelli.[1]

In an effort to avoid this succession of depositions and expedite discovery, prior to deposing Percopo and Rizzitelli, Aresty had asked the defendant on several occasions to designate a Rule 30(b)(6) witness pursuant to the March 4 deposition notice. The defendant

---

[1] For an overview of the deposition maze traversed by Aresty, see Memorandum in Support of Plaintiff's Motion to Compel Discovery With Respect to Inadvertently Disclosed Documents, pp. 17-18, n. 9.

GSDOCS\1523216.1

ignored these requests and ultimately took the position that it would not make any Rule 30(b)(6) designations.

The need to take additional depositions resulted in another continuance of the trial date, this time by joint motion on May 11, 2005, less than a week before the scheduled trial date. The trial date was continued from May 16 to June 6, 2005. In the joint motion, Aresty indicated the need to depose Mr. Percopo on the subject matter of the Hartford's denial of Aresty's claims. Aresty also indicated its intent to disclose Bruce Swerling[2] as an expert witness expected to testify on two issues central to Aresty's claims: the extent of loss suffered by Aresty under the insurance policy, and the industry standard of care for adjusting claims for losses similar to Aresty's.[3] The new trial date gave the parties twenty-one days to complete fact discovery and make the anticipated expert disclosures.

Nevertheless, the defendant continued to evade Aresty's requests for the deposition of Mr. Percopo. Finally, Aresty formally noticed his deposition for June 2, at which he failed to appear. These tactics caused another continuance of the trial, this time from June 6 to the current date of September 19, 2005.

In light of the September trial date, Aresty renewed its efforts to compel the deposition of Mr. Percopo or someone else with comparable knowledge of the Rule 30(b)(6) subject matters by filing a motion to compel a Rule 30(b)(6) witness.[4] Instead of compelling the defendant to make this designation, the Court bound the defendant to its representation that Perry, Draper,

---

[2] Mr. Swerling is a Senior Professional Public Adjuster and past president of both the National and Massachusetts Association of Public Insurance Adjusters. Currently a principal at Swerling Milton Winnick, Mr. Swerling has wide experience in the adjustment of losses similar to Aresty's.

[3] Thus, the defendant is incorrect when it alleges that "Swerling's involvement in this case was first disclosed as the result of Aresty's Responses to Hartford's First Set of Interrogatories" on July 13, 2005. See Defendant's Motion to Strike, ¶ 4. The joint motion, signed by both parties on May 11, identified Mr. Swerling by name and described the two anticipated subject areas of his testimony.

[4] Before Aresty filed the motion to compel, it took the deposition of Mr. Percopo, but without a 30(b)(6) designation.

Percopo, and Rizzitelli constituted the universe of persons involved in the adjustment or denial of Aresty's claims, and accordingly ordered that the defendant make Mr. Rizzitelli, the only person yet to be deposed, available for deposition prior to the parties' July 13 status conference.

The thrust of Rizzitelli and Percopo's deposition testimony was to implicate Mr. Perry as the critical decisionmaker in the Hartford's denial of Aresty's claims. When Aresty sought to resume the deposition of Mr. Perry in light of this testimony, the defendant objected, even though Aresty had suspended the deposition of Perry pending the resolution of an attorney-client privilege issue dealing with documents concerning the subject matter of the Hartford's denial. The defendant's objection compelled Aresty to file a motion seeking the waiver of the attorney-client privilege, or, in the alternative, allowance to continue the deposition of Mr. Perry on the subject matter of the allegedly privileged documents. The Court ordered the continuation of Mr. Perry's deposition on the subject documents.

The earliest the defendant could confirm a date for Mr. Perry's deposition was for August 30, 2005, less than three weeks before trial. During the time that the parties were attempting to schedule Mr. Perry's deposition, the defendant asked for a date when it could expect Aresty's expert disclosures, given the absence of a court ordered deadline for expert discovery. Aresty explained to the defendant that, in accordance with the usual course of discovery, Aresty would be in a position to make its expert disclosures upon the conclusion of fact discovery. Aresty explained that the production of an expert report prior to the conclusion of fact discovery would prove premature and useless, as the identified areas of Mr. Swerling's testimony were precisely those for which Aresty was seeking to elicit further testimony from Mr. Perry. Indeed, in anticipation of the defendant's discovery needs, Aresty proposed to depose Mr. Perry as soon as possible to establish the factual predicate for Mr. Swerling's report. Aresty communictaed its

position on several occasions to defendant, including by letter on July 28 and August 10, and in connection with a thirteen page document prepared by Mr. Swerling setting forth his calculation and analysis of Aresty's extent of business income loss, which Aresty produced to defendant on August 12.[5]  Nonetheless, August 30 was established as the ostensible date for concluding fact discovery.

The defendant filed the underlying motion to strike the designation of Mr. Swerling on August 16.  The motion does not contain a Rule 37 certification and, more importantly, the defendant never attempted to confer with Aresty about reasonably resolving the remaining expert discovery with the ongoing fact discovery and looming trial date.

## LEGAL ARGUMENT

I.    **The Court Cannot Even Consider the Defendant's Motion to Strike Because it Fails to Contain the Requisite Rule 37 and Local Rule 37.1 Certifications**

As a threshold matter, the plain language of the Federal Rules prevents the Court from considering Defendant's Motion to Strike.  Rule 26.2(C) of the Local Rules states in clear, mandatory language: "The judicial officer shall not consider any discovery motion that is not accompanied by a certification, as required by LR 7.1(A)(2) and LR 37.1(B), that the moving party has made a reasonable and good faith effort to reach agreement with opposing counsel on the matters set forth in the motion."[6]  Local Rule 37.1(A) requires that, before a party may file a discovery motion, both sides "shall confer in good faith to narrow the areas of disagreement to the greatest extent possible."  In addition, LR 37.1(B) provides that such a motion "shall include

---

[5] Aresty also explained its need to conclude fact discovery before producing the export report in its June 2 Emergency Motion.

[6] Local Rules 26.2(C) and 37.1 derive from the certification and conference requirements set forth in Fed.R.Civ.P 37(a)(2)(A).  Rule 37(a)(2)(A) provides that any motion submitted thereunder "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."  Although the defendant's Motion to Strike does not clearly identify under what rule defendant is seeking the requested relief, the applicable rule is Rule 37, and the motion therefore falls under the rule's certification and conference mandate.  See Indiana Ins. Co. v. Hussey Seating Co., 176 F.R.D. 291, 293 (S.D. Ind. 1991) (motions to exclude expert testimony are made under Fed.R.Civ.P. 37(c)(1)).

6

a certificate in the margin of the last page that the provisions of this rule have been complied with." Failure to observe the certification and conference requirements results in mandatory dismissal of the discovery motion. See In re Lane, 302 B.R. 75, 79 (D. Idaho 2003)("Such an attempt to actually meet, and the certification of the efforts made in good faith, were and are prerequisites to bringing the motion and having it considered.").

Defendant's motion fails to satisfy both the certification and conference requirements. Defendant's motion does not include a certificate in the margin of the last page that defendant ever engaged Aresty in a good faith effort to resolve the timing of Aresty's expert disclosures. LR 37.1 is clear about what this certificate would have had to include: "the memorandum must state with particularity…(1) if a discovery conference was not held, the reasons why it was not; (2) if a discovery conference was held, the time, date, location and duration of the conference; who was present for each party; the matters on which the parties reached agreement; and the issues remaining to be decided by the court…" The defendant does not certify that a discovery conference was held; nor does it explain the reasons why it was not held.[7] Defendant's failure to attach the certificate, alone, mandates dismissal. See Ross v. Citifinancial, Inc., 203 F.R.D. 239, 240 (S.D. Miss. 2001) ("the attachment of a Good Faith Certificate, in proper form, is a mandatory prerequisite to the Court's consideration of a motion to compel.").

The defendant's failure to include the mandatory certificate speaks to a larger defect in its motion practice. The requirement that parties confer in good faith before filing discovery motions reflects the considered judgment of the Federal Rules that most discovery disputes can

---

[7] The defendant has not claimed, nor could it claim, that the recent correspondence between itself and Aresty satisfied Rule 37 and LR 37.1  First, the defendant never indicated anywhere in its letters concerning Bruce Swerling that they were intended to engage Aresty in a reasonable effort under Rule 37 to resolve any disputes concerning Mr. Swerling's disclosure.  Second, the letters never indicated a stalemate for which motion practice was obviously required.  Finally, the conference requirement contemplates dialogue (in person or over the phone) rather than correspondence, and thus gives no indication that letter writing satisfies the Rules.  See Ross, 203 F.R.D. at 240 ("the requirement of a certificate cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue.").

be resolved among the parties without court intervention.  As recent as four days prior to defendant's motion, Aresty had sent correspondence to defendant acknowledging defendant's need for expert discovery and proposing to expedite fact discovery to make its expert disclosures available well before trial.  This final correspondence between the parties did not suggest that an impasse, let alone an impenetrable one, had been reached.  Even if defendant believed that such an impasse had been reached, the Federal Rules placed it under an obligation to confer with Aresty, communicate its concerns, and confirm whether or not they could be resolved by the parties without court intervention.  See Hasbro Inc. v. Serafino, 168 F.R.D. 99, 101 (D. Mass 1996) ("[t]hat Defendant's counsel may have considered the entire matter to be at an impasse…does not excuse the failure to include the necessary certification with this Court.").  The defendant was not at the liberty of simply assuming the parties had reached a stalemate and thus turning to the Court for the ultimate discovery sanction.

Not only did defendant's motion practice prevent the parties from resolving their discovery dispute on their own, it prevented the parties from at least narrowing the dispute for presentation to the Court.  "It is not up to the Court to expend its energies when the parties have not sufficiently expended their own."  Id.  Even a partially successfully conference may have refined the parties' dispute to a dispute over dates by which the expert disclosures should be made.  Aresty never indicated that it would not make its expert disclosures; and its disclosure of the identity of Bruce Swerling and the anticipated areas of his testimony as far back as May precludes any suggestion that Aresty was attempting to stonewall or unfairly surprise defendant with its expert.  Both parties were faced with the challenge of ongoing discovery and an impending trial date.  The question was not whether disclosures would be made, but how and

8

when.  Instead of settling on alternative proposals to be made to the Court, the defendant immediately resorted to the extreme sanction of exclusion.

For these reasons, the Court should dismiss defendant's motion as premature and contrary to the spirit of the discovery rules.  Aresty is confident that the dispute over Mr. Swerling's disclosure can be narrowed, if not resolved, by a sincere and good faith effort to fashion an expedited but workable discovery schedule leading up to trial.

## II.    **The Requested Exclusion of Plaintiff's Expert is a Severe and Unwarranted Sanction under the Circumstances of this Case**

Even if the Court reaches the merits of defendant's motion, it should reject the requested sanction of exclusion as severe, unwarranted, and out of keeping with the circumstances of the present case.  First, as shown above, defendant's motion practice deprived the parties of an opportunity to reach a reasonable resolution of its discovery dispute and instead proceeded immediately to the ultimate sanction of exclusion that threatens to impair the Court's treatment of this case on the merits.  Whether the challenged conduct should ever have this effect on the disposition of a case, there is no question that this sanction is severe and unwarranted where it's the first rather than last resort of a party to a discovery dispute.  Second, the defendant's request for exclusion wholly ignores the extent to which its own unscrupulous discovery conduct put the parties in a position where expert discovery could not be conducted in a timely fashion.  Finally, given the time pressure that the expedited trial date has put on both parties' discovery practice, Aresty's failure to complete its expert disclosures before the clearly inapplicable 90-days before trial is justified and does not harm the defendant any more than the abbreviated discovery period has challenged both parties' discovery.

The defendant's request for exclusion relies on a provision of the Federal Rules that clearly has no application here.  In speaking of expert disclosures, Fed.R.Civ.P. 26(a)(2)(C)

provides that, "in the absence of other directions from the court or stipulations by the parties, the disclosures shall be made at least 90 days before the trial date or the date that the case is to be ready for trial." Applying this Rule literally to exclude the expert testimony of Mr. Swerling would have precluded either party from offering expert witnesses from day one of this action. When trial was set for April 18, 2005 at the February 22 Pretrial Conference, the parties had less than 60 days to conclude discovery. Neither party suggested, however, that this discovery period should disable expert discovery. Rather, both parties necessarily agreed to a time schedule different from the schedule set forth in the Federal Rules, which presumes a trial date more than 90 days out and provides for pretrial deadlines by working backwards from that date. It was incumbent on the parties, therefore, to implement a modified schedule for concluding the necessary discovery.

Without a court ordered schedule, it was reasonable for the parties to model their schedule on customary discovery practice. In the normal progression of discovery, the parties would have concluded their fact discovery and then proceeded to expert discovery and the applicable expert disclosures. Even in the absence of court order to this effect, it was reasonable for the parties to rely on this progression as expert testimony, manifestly opinion testimony, demands a factual predicate. As a result, Aresty immediately sought to undertake fact discovery and indeed sought to expedite it by making use of Rule 30(b)(6), which would have produced factual testimony on the Hartford's behalf on the critical subject matters of the underlying lawsuit—through a single deposition. Instead, discovery on these subject matters proved difficult and prolonged as Aresty was required to depose witness after witness to obtain competent testimony on relevant subject matters, the most critical of which, the Hartford's denial of Aresty's claims, remains outstanding and will not be concluded until August 30.

10

Even while contending with defendant's discovery practice, Aresty has made reasonable efforts to apprise the defendant of Mr. Swerling's proposed testimony. Ever since its May 11 disclosure, Aresty has consistently identified two subject areas for which it expected expert testimony: (1) the extent of business income loss under the insurance policy and (2) the industry standard of care in adjusting losses similar to Aresty's. In regards to the first subject area, Aresty produced to defendant, prior to its motion, a detailed spreadsheet setting forth Mr. Swerling's analysis and calculation of Aresty's business income loss. In regards to the second subject area, Aresty has explained to defendant on several occasions that an expert opinion on whether the Hartford's adjustment of Aresty's claims departed from industry practice must await competent testimony on the process by which the Hartford actually adjusted and ultimately denied the claims—testimony that Aresty has yet to receive.[8] It is simply not the case, therefore, that Aresty has undertaken a deliberate course of stonewalling or ambush in its expert disclosures. Cf. Equant Integration Services, Inc. v. United Rentals, Inc., 2002 U.S.Dist.LEXIS 26657, at *17 (D. Conn. 2002) ("The purpose of Rule 26(a) is to prevent ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence."). Rather, it has attempted to make the best of the fact discovery provided by the defendant.

For these reasons, the Court should not reward defendant's discovery conduct by striking Aresty's expert designation. "The exclusion of critical evidence is an extreme sanction which is not normally imposed absent a showing of willful deception or flagrant disregard of a court order." Daugherty v. Fruehauf Trailer Corp., 146 F.R.D. 129, 130 (E.D. Pa. 1993). The

---

[8] Incredibly, for example, Aresty has yet to elicit deposition testimony from someone who purports to have been a central decisionmaker in the adjustment and denial of Aresty's claims. The finger pointing among the universe of witnesses identified by the defendant has led Aresty from Mr. Perry to his supervisors and now back to Mr. Perry. See Memorandum in Support of Plaintiff's Motion to Compel Discovery With Respect to Inadvertently Disclosed Documents, pp. 17-18, n. 9. Either the confusion that surrounds the Hartford's adjustment practice is sincere and speaks to the merits of the case, or is the product of testimony that is less than forthcoming. In either case, now that Mr. Perry has been finally fingered as the person most responsible for the Hartford's conduct, Aresty should be allowed to depose him before making expert disclosures on precisely this topic.

defendant has not shown any conduct that would warrant this sanction. At most, Aresty's expert discovery suffers from the same irregularity that has characterized the parties' discovery practice since the inception of this action; and more particularly, from the defendant's own discovery practice that, until now, has not displayed the level of urgency fitting of an expedited trial date.

## <u>CONCLUSION</u>

For the foregoing reasons, Aresty respectfully asks the Court to reject Defendant's Motion to Strike Designation of Plaintiff's Proposed Expert, Bruce Swerling.


ARESTY INTERNATIONAL
LAW OFFICES, P.C.

By its attorneys,

/s/ Derek B. Domian_____
James T. Hargrove (BBO# 550975)
Derek B. Domian (BBO# 660568)
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776


Date: August 30, 2005